UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| _____ | ) | |
| United States of America | ) | |
| | ) | |
| v. | ) | Cr. No.: 23-CR-00012-1-PB |
| | ) | |
| Rhonda Simpson, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR VARIANCE, AND
REQUEST FOR A NON-GUIDELINES SENTENCE UNDER BOOKER**

NOW COMES the Defendant, Rhonda Simpson, by and through counsel, Shaheen & Gordon, P.A., respectfully submitting this Sentencing Memorandum, Motion for Variance and Request for a Non-Guidelines Sentence Under Booker and, in support thereof, states as follows:

**Introduction**

Rhonda Simpson pleaded guilty to Conspiracy to Make False Statements contrary to 18 U.S.C. §§ 1001(a)(1) and 371. The Plea Agreement, entered into pursuant to Fed. R. Cim. P. 11(c)(1)(C), stipulates to a sentence of 3 years' probation, restitution in the amount of $200,000 to the Veteran's Administration pursuant to 18 U.S.C. § 3663(a)(3), and no fine. See Plea Agreement § 6 (Doc. 40). According to the Presentence Investigation Report ("PSR"), applying USSG § 2B1.1, Ms. Simpson's total offense level is 17 and her criminal history is category I, resulting in an advisory guideline sentence of 24 to 30 months imprisonment. See PSR at ¶ 86. As explained more fully below and in the PSR objections, the government and Ms. Simpson disagree with probation's application of § 2B1.1 to the facts of this matter. Rather, the parties contend that § 2J1.2 is the appropriate guideline given that offense of conviction entails false statements rather than fraud. The parties believe the nature and circumstances of the offense and Ms. Simpson's

history and personal characteristics support the stipulated sentence because it accomplishes the sentencing goals set forth in 18 U.S.C. § 3553(a). Specifically, Ms. Simpson's acceptance of responsibility, her lack of any criminal history, that she will have a felony-level conviction causing her to surrender her license to practice law, and her otherwise positive contributions to her community and family, support the agreed-upon sentence.

## I.  Procedural History

On February 1, 2023, Ms. Simpson (and co-defendant, David Montoya) were charged in a two-count Indictment with Conspiracy to Submit False Claims in violation of 18 U.S.C. § 286, and Conspiracy to Make False Statements in violation of 18 U.S.C. §§ 1001(a)(1) and 371, in relation to claims submitted to the Veterans' Administration ("VA") by StoneMakers Corporation and Academy ("StoneMakers").  The government and Ms. Simpson worked cooperatively and reached a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (C), which included the binding stipulated sentence of three years of probation and restitution in the amount of $200,000.00.  See Plea Agreement at § 6; PSR at ¶ 5.

On May 28, 2024, Ms. Simpson accepted responsibility and pled guilty to Count Two of the Indictment.  Under the terms of the Plea Agreement, the government will dismiss Count One at sentencing. Ms. Simpson was released with certain conditions pending sentencing and has been fully compliant with all conditions of her release.

## II.  Background and Additional Facts

Notably, Ms. Simpson only pleaded guilty to Count Two: Conspiracy to Make False Statements and the Plea Agreement details the conduct that the parties agree could be proven beyond a reasonable doubt in support of that charge.  See Plea Agreement § 3 (Offense Conduct). It is the defense's position that these stipulated facts fairly reflect the relevant conduct for the

purposes of sentencing and Ms. Simpson fully accepts responsibility for her errors in judgment that resulted in false submissions to the VA. However, the PSR primarily focuses on conduct relevant to Count One, to which Ms. Simpson did not plead guilty, and is premised on allegations that the defense maintains cannot be proven beyond a reasonable doubt at trial (or by a preponderance of the evidence at sentencing). It is the defense's position that while the 85/15 rule existed throughout the relevant time frame, in practice, the VA treated it as a guideline and not as a rule. In the summer of 2017, the VA began making inquiries regarding compliance with the 85/15 rule even though the rule had not previously been vigorously enforced. In was in the context of a changing regulatory atmosphere creating a concern of potential retroactive application of a previously unenforced rule that errors in judgment were made resulting in the submission of false statements that serve as the basis for the conviction. Ms. Simpson fully accepts responsibility for that conduct. However, because the PSR so heavily focuses on the fraud allegations, the defense is compelled to briefly respond to place that conduct in context and outline the defenses to those allegations.

**The 85/15 Rule**

Count One alleges that Ms. Simpson and Mr. Montoya conspired to submit false claims that were not in compliance with the VA's so-called 85/15 rule. There are numerous flaws to this charge.

Under 38 U.S.C. § 3680A, the "Secretary shall not approve the enrollment of any eligible veteran" in an education program if the Secretary determines the educational institution is out of compliance with the 85/15 rule. 38 U.S.C. § 3680A(d)(1). To be compliant with the 85/15 rule, the school must submit calculations demonstrating the compliant ratio of veterans to non-veterans within 30 days of each calendar quarter. 38 C.F.R. § 21.4201(f)(2)(ii). The VA may not pay tuition

benefits if the educational institution is either out of compliance with the 85/15 rule, or if the institution has failed to submit a timely computation. 38 C.F.R. § 21.4201(g)(2)-(3).

Based on the actual reporting rule as specified by 38 C.F.R. § 21.4201(f)-(g), the government was required to request compliance reports on a quarterly basis, and a failure to respond would result in the denial of enrollment of any veteran in the program. If the rule was enforced, Ms. Simpson would not have been able to enroll any veteran and StoneMakers would not have received any payment because Ms. Simpson never timely filed a report on a ratio calculation demonstrating compliance. The reason is straightforward—***she was never asked to file one and the program administrators never provided notice of a requirement to file one***. Indeed, in this region at least, Statements of Assurance of Compliance were not even requested by the VA until September 2018, **after** StoneMakers had left the program. <u>See</u> RS_USANH-00002330.[1] During the relevant time frame, the VA failed to enforce the 85/15 rule and, the defense contends, only retrospectively inquired into alleged violations a rule that was treated as a guideline in real time.

Additionally, Ms. Simpson and StoneMakers **passed** their annual VA compliance inspections **every single year**, which included an evaluation of the 85/15 rule. The only year StoneMakers did not pass the annual compliance inspection was 2018 because the inspection never occurred. On July 1, 2015, James Margeson, the administrator of the program, wrote that StoneMakers was in compliance with the 85/15 rule, and affirmed that StoneMakers was compliance-tested every year. <u>See</u> RS_USANH-00001944. Mr. Margeson stated should StoneMakers violate the 85/15 rule, he would "make an action plan." <u>Id.</u> From July 1, 2105 when

---

[1] The first documented request for a Statement of Assurance of Compliance.

Mr. Margenson made that statement to early 2018, when he left his role as administrator, he never felt compelled to make such an action plan for Stonemakers.

Ms. Simpson understood that her role was to certify that the students receiving VA funds were, in fact, veterans – meaning that only eligible veteran students received funding. Importantly, Ms. Simpson would certify the enrollments as she received them – far before she had a final roster for the training. Often, veterans would apply months before the training took place. At the time Ms. Simpson certified the enrollment, she did not have the final totals for either the veterans or the contractors who would attend the class meaning, at the time of submission, she had no ability to know whether the training would be in or out of compliance with the rule. Often, the civilian contractors would join or drop out with very little advanced notice, despite StoneMakers' best efforts to have balanced, compliant training programs. To that end, when veterans were unable to attend a course, Ms. Simpson dutifully unenrolled them, ultimately racking up an approximate $500,000 deficit that StoneMakers repaid to the government.

In discovery, the government provided examples of the allegedly false claims StoneMakers submitted to the VA on VA Form 22-1999. See PSR at ¶ 17. VA form 22-1999 makes no reference to the 85/15 rule or the relevant CFRs or statutes containing the same. Accordingly, when submitting claims for payment, Stonemakers did not represent it was in compliance with the 85/15 rule as alleged in the Indictment. In the School Certifying Official training manual produced in discovery containing 142 pages, the 85/15 rule is referenced in a single paragraph, followed by two pages in the Appendix, which reads "Appendix B Statement of Assurance of Compliance with 85/15 Enrollment Ratios." As explained above, during the relevant time period, the VA never asked StoneMakers to complete and submit the Statement of Compliance, never provided notice

of any requirement to submit the Statement of Compliance, and, for the vast majority of the time, never really enforced the 85/15 rule at all.[2]

Moreover, in January 2018, after it appeared the VA intended to more vigorously enforce the rule, Ms. Simpson sought out SAA Margeson for a meeting to discuss the challenges StoneMakers faced in complying with the 85/15 rule. See PSR at ¶ 30. Ms. Simpson told SAA Margeson she was concerned about the VA's guidance on the 85/15 rule and asked for help. Id. SAA Margeson left his position shortly thereafter.  In August 2018, StoneMakers voluntarily withdrew from the program, informing the VA that it could not comply with the newly enforced 85/15 rule.

**The Same Tuition Rule**

The PSR also focuses on the so-called "Same Tuition Rule" that required programs to charge veterans and non-veterans the same tuition for like programs.  It is true that Stonemakers often charged veterans and non-veterans different rates.  However, an April 27, 2017 Compliance Survey documents that Ms. Simpson told the VA that StoneMakers was charging contractors and veterans different tuition.  See RS_USANH-00002378-2386; see also PSR ¶¶ 23, 30, 37.  Ms. Simpson provided similar information to the VA in an August 22, 2017 email.  See RS_USANH-1931.

**False Statements**

When entering her guilty plea, it was not Ms. Simpson's intention to dispute the evidence in this matter.  And she does not dispute the evidence relating to the offense of conviction.  Even

---

[2] A 2022 amendment to 38 U.S.C. § 3680A includes language that exempts "a program of education for which fewer than 10 students are having all or part of their tuition, fees, or other charges paid to or for them by the educational institution or by the Department of Veterans Affairs" from the 85/15 rule given the significant burden smaller programs, such as Stonemakers, face in meeting this requirement.  Had this provision been in effect during the relevant period, all but three of the tuition claims referenced in the Indictment would have been in compliance with the 85/15 rule because there were fewer than 10 veterans receiving funds.

though the defense believes the government could not prove the False Claims Act charge beyond a reasonable doubt, Ms. Simpson fully concedes that when the VA made inquiries starting in the summer of 2017, the responses provided were not accurate and were false statements under 18 U.S.C. § 1001. Ms. Simpson deeply regrets this conduct, which is contrary to an otherwise law-abiding life, and fully accepts responsibility for it.

### III.    The Parties Proposed Sentence Accomplishes the Goals of Sentencing

### A.    Federal Sentencing Guidelines Are Not Presumed Reasonable

Post Booker, the United States Sentencing Guidelines ("the Guidelines") are merely the starting point for arriving at the proper sentence. See Gall v. United States, 552 U.S. 38, 49 (2007); United States v. Smith, 531 F.3d 109, 111 (1st Cir. 2008). After calculating the Guidelines range, the Court should consider factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence, explain its reasoning, and select a sentence that is sufficient, but not greater than necessary," to achieve the goals of sentencing. Smith, 531 F.3d at 111 (quoting 18 U.S.C. § 3553(a)).[3]

In selecting the appropriate sentence, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Nelson v. United States, 555 U.S. 350, 352 (2009) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)). The guidelines are not

---

[3] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . . See 18 U.S.C. § 3553(a)(1) and (2).

only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." <u>Id</u>. (emphasis in original).

The guideline for a violation of 18 U.S.C. § 1001 is USSG § 2B1.1 or § 2J1.2 (under certain statutes which do not apply here). <u>See</u> USSG Appendix A. However, because there is no underlying fraudulent activity, § 2B1.1 does not accurately capture the offense conduct. This is reflected in the cross reference to the guideline:

> If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (*e.g.*, 18 U.S.C. § 1001, § 1341, § 1342, or § 1343); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

> <u>See</u> USSG § 2B1.1(c)(3).

Each of these three prongs apply here. Ms. Simpson was not convicted of any of the offenses identified in subsections (1) and (2); she was convicted of 18 U.S.C. § 1001; and the conduct at issue is obstruction and covered by USSG § 2J1.2. Accordingly, the guideline analysis should be as follows:

> Base offense level 14. USSG § 2J1.2(a).
> Decrease of 2 levels for acceptance of responsibility. USSG § 3E1.1(a).
> Total Offense Level 12. Advisory guideline range of 10-16 months, Zone C.

None of the specific offense characteristics in § 2J1.2(b) apply because Ms. Simpson was not convicted of any sex offense, the offense did not cause or threaten to cause physical injury or property damages, and the offense did not involve international terrorism. Moreover, there was

no substantial interference with the administration of justice or extensive destruction, fabrication, or alternation of documents.[4]

The PSR maintains that § 2B1.1 applies to the facts of this case. While the defense disagrees, if the Court concludes § 2B1.1 does apply, it should determine that because there was no underlying fraud, no loss should be applied. Moreover, the fraud as described in the PSR does not meet the guidelines' definition of "relevant conduct." Section 1B1.3 defines relevant conduct to include (1) all acts by the defendant, and reasonably foreseeable acts of a co-conspirator "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," and (2) "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions [by the defendant or reasonably foreseeable acts of a co-conspirator] that were part of the same course of conduct or common scheme or plan as the offense of conviction." Here, with respect to the first definition, it is clear that the alleged fraud did not occur "in preparation for" the false statements (as there was no indication any false statements were anticipated at that time) or "in the course of attempting to avoid detection or responsibility" for the false statements. Moreover, any fraud in 2018 was not "part of the same course of conduct or common scheme or plan" as the false statements. See United States v. Herlihy, 336 F.R.D. 217, 231 (D.N.M. 2020) ("The Court concludes that the convicted offense -- making a false statement to a bank -- is distinct from the truck stop's successful efforts to obtain a $16.5 million loan from a different bank the year before the convicted offense"); United States v.

---

[4] The government agrees that § 2J1.2 is the appropriate guideline with a base offense level of 12. In the alternative, the government takes the position that § 2C1.1 applies with a base offense level of 12. Although not specifically advanced in her PSR objections, Mrs. Simpson does not object to this alternative approach which, with acceptance of responsibility, results in a total offense level 10 and an advisory guideline sentence of 6-12 months, Zone B.

Griffith, 115 F. Supp. 3d 726, 737 (S.D.W.Va. 2015) (holding that scheme "to receive ill-begotten kickbacks" was not relevant conduct for false statement to IRS).

Accordingly, if the Court concludes that § 2B1.1 applies, the guideline analysis should be as follows:

Base offense level 6.  USSG § 2B1.1(a)(2).
Decrease of 2 levels for acceptance of responsibility.  USSG § 3E1.1(a).
Total Offense Level 4.  Advisory guideline sentence of 0-6 months, Zone A.

Under any guideline, we do not believe an adjustment under § 3B1.1 is warranted because the employee referenced was merely performing her ordinary job functions in preparing spreadsheets and contracts and, therefore, Ms. Simpson was not acting as an organizer, manager, or supervisor of criminal activity when interacting with the employee.

**B.     Rhonda Simpson is a first-time offender who has accepted full responsibility for her conduct**

Rhonda Simpson is 56 years old, married to her husband of 30 years, and a mother of two children, ages 25 and 24. See PSR at ¶¶ 67 and 69.  Her husband is a dentist and the director of a non-profit organization providing affordable dentistry and servicing many Medicaid and underprivileged patients in the greater Concord area.  Ms. Simpson served on the board of the non-profit until she resigned because of the investigation and conviction.  Although she did not actively practice law, Ms. Simpson is a licensed lawyer and did not contest the suspension of her license resulting from her guilty plea.  We anticipate the New Hampshire Supreme Court will take further action against her license once Ms. Simpson is sentenced.   Ms. Simpson contributes to the household finances and helped finance her children's education, which occurred during the lengthy investigation into this matter heightening the ordinary pressures facing many families sending children to college.

During the relevant time period, Mr. Montoya owned StoneMakers. Ms. Simpson was the Vice President and School Certifying Officer responsible for compliance with VA programs. It was a difficult work environment. Due to this investigation and business and regulatory issues, Ms. Simpson heled wind down StoneMakers and started a new business, Concrete Developments, LLC, to disassociate herself from StoneMakers and Mr. Montoya which she now recognizes was a toxic work environment in which she made the illegal decisions resulting in this conviction. As discussed above, at the time it appeared the VA was changing its focus on the 85/15 program and began making inquiries about past compliance. In stark contrast to her life as a law-abiding citizen and concerned about potential retroactive application of complex regulatory rules that had not previously been treated as a hard and fast rule, Ms. Simpson caused incorrect and misleading documents to be submitted to the VA. She is ashamed of her role in the offense and fully accepts responsibility for it. As documented in the PSR, Ms. Simpson has been diagnosed with situational depression because of the investigation and prosecution. PSR at ¶ 73. Her conduct is completely out of character and the likelihood of recidivism is extremely low given the unique circumstances and fact patten of this case.

###        C.        The Proposed Sentence Accomplishes the Goals of Sentencing

The Parties believe the recommended sentence of three years of probation and restitution of $200,000.00 accomplishes the goals of sentencing. Ms. Simpson will be a convicted felon because of the instant offense conduct. The charged conduct springs from complex internal processes, a hostile professional dynamic, and the government's retrospective interest in enforcement of any otherwise forgotten-about rule, rather than some malevolent and intricate scheme, despite the suggestion of the PSR.

The Government and Defense both believe that the proposed sentence accomplishes the goals of sentencing in this case. Three years of supervision by U.S. Probation, a felony-level conviction, along with the payment of $200,000.00 in restitution, and (though outside of the sentence itself), a suspension of her law license, which she has maintained for nearly 30 years, provides sufficient and appropriate punishment. It also imposes adequate deterrence to Ms. Simpson and the public generally, and reflects the seriousness of the offense, while also considering Ms. Simpson's unique history and the characteristics and nature of the offense, as described in the PSR and in this memorandum. 18 U.S.C. § 3553(a)(1) and (2).

IV.    **Sentencing Request**

Ms. Simpson joins the Government in its request for a below-guideline sentence of three years of probation and restitution in the amount of $200,000.00. This sentence is sufficient, but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

Rhonda Simpson
By Her Attorneys:
SHAHEEN & GORDON, P.A.

Dated: December 4, 2024

/s/ William E. Christie
William E. Christie
NH Bar #11255
107 Storrs Street/P.O. Box 2703
Concord, NH 03302-2703
(603) 225-7262
wchristie@shaheengordon.com