UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-12-PB |
| | ) | |
| RHONDA SIMPSON | ) | |

**GOVERNMENT'S SENTENCING REPLY MEMORANDUM**

The United States of America, by Jane E. Young, United States Attorney for the District of New Hampshire, submits this memorandum in connection with the sentencing of Rhonda Simpson and defendant's sentencing memorandum. As set forth herein, and per the terms of the parties' written plea agreement, the government joins in the defendant's request that the Court accept the parties' Rule 11(c)(1)(C) negotiated disposition of 3 years' probation and $200,000 of restitution.

**I.     INTRODUCTION**

On May 28, 2024, defendant pleaded guilty to count two of the indictment charging her with conspiracy to make false statements, in violation of 18 U.S.C. §§ 371 and 1001(a)(1). The United States Probation Office determined defendant's total adjusted offense level to be 17 in its Presentence Report ("PSR") because it applied a loss amount of between $250,000 and $550,000, triggering application of § 2B2.1(b)(1)(G). PSR ¶ 48. Defendant received an additional enhancement as a leader or supervisor of criminal activity under § 3B1.(c). Id. ¶ 50. Defendant falls in Criminal History Category I by virtue of no previous criminal history of any kind. Id. ¶¶ 60-62. After accounting for defendant's acceptance of responsibility, she faces a Guidelines Sentencing Range of 24-30 months imprisonment, a term of supervised release of 1-3 years, and a fine of $10,000 to $95,000. Id. ¶¶ 86, 89, 94.

The parties previously negotiated a binding Rule 11(c)(1)(C) providing for a three year term of probation and restitution of $200,000. While outside the applicable Guidelines range determined by Probation, the government respectfully requests the Court adopt the parties agreement for the reasons set forth below. Pursuant to the factors set forth in 18 U.S.C. § 3553(a), the Government believes the negotiated resolution remains appropriate in light of the unique nature of the charges and relevant conduct here, the defendant's history and characteristics, and the need for both specific and general deterrence and to promote respect for the law.

## II. BACKGROUND

### A. Background on the Post 911/GI Bill

Pursuant the "Post/911 GI Bill," the Veterans Administration ("VA") provides educational assistance by paying tuition, fees, and other educational costs for eligible veterans of the U.S. military. See 38 U.S.C. § 3311. Generally, the Post-9/11 GI Bill applies to individuals who actively served in the military after September 11, 2001, and who qualify for assistance based upon their length of service, the nature of their discharge, and other factors. See 38 U.S.C. § 3311(b)-(e). Starting in 2011, the VA implemented a significant change in the eligibility for Post-9/11 GI Bill benefits when it began paying the benefits for qualified veterans pursuing non-institute of higher learning (non-IHL), non-degree programs, including programs or courses offered by non-accredited, non-college degree (NCD) schools.

Tuition and fees (collectively "tuition") are paid by the VA to an approved school on behalf of an enrolled veteran. 38 U.S.C. § 3313(g)(3). The other benefits, housing costs, and money for books and supplies, which are not at issue here, are paid directly to the veteran. Veterans are subject to lifetime benefit limit under the bill in the amount of $45,000/veteran.

### B. The Same Tuition Rule and the 85/15 Rule

Before the VA would pay for a veteran's tuition, the school must certify the veteran's enrollment in an approved course. See 38 C.F.R. § 21.9680(b)(1). Importantly for this case, a school may not charge more for veterans to attend a course than it charges civilians to attend the same course. See 38 C.F.R. § 21.4210(d)(4)(i). Any school that violates "the same tuition rule" is subject to suspension or dismal from the program. Id. The VA will not pay for claims submitted from a course that violated the same tuition rule.

The VA also will not approve the enrollment of veterans in any course in which more than 85% of the students receive tuition benefits under the Post/911 GI Bill. See 38 C.F.R. § 21.4201(a). The school is responsible for ensuring that veterans receiving VA tuition assistance do not make up more than 85% of their student population for any given course. Any school that violates "the 85/15 rule" is subject to suspension or dismissal from the benefits program. See 38 C.F.R. § 21.4201(g)(2).

An approved school must designate a person of authority at the school to serve as its School Certifying Official ("SCO"). The SCO is responsible for the certifying information required for the payment of tuition benefits as described above. Specifically, an SCO must complete VA Form 22-1999, VA Enrollment Certification, for each veteran who will receive VA tuition assistance funds. Using this form, the SCO certifies the course in which the veteran is enrolled, the start and end dates of the enrollment period, the number of hours per week the veteran will attend the course, and the tuition amount. An SCO is also required to notify the VA if there are changes to the previously certified information.

Of note, the VA does not track the number of civilian students who attend a course. Rather, to ensure compliance with the 85/15 rule, the VA relies on the representations made by

SCOs on VA Forms 22-1999 and during VA-performed annual compliance surveys performed by the VA.

### C. StoneMakers Corporation and Academy

StoneMakers Corporation (the "corporation") was a New Hampshire entity that sold and constructed outdoor living areas, retaining walls, waterfalls, and other hardscapes for its residential and commercial customers. Co-defendant David Montoya was the corporation's incorporator, owner, president, and Chairman of the Board. Defendant Simpson was the corporation's registered agent, vice president, and in-house counsel, responsible for the corporation's finances and bookkeeping. Both Montoya and Simpson were at StoneMakers for the duration of the conduct at issue here.

From its inception, a portion of the corporation's business involved marketing and selling training in its concrete landscape methods. The corporation started operating this training portion of the business under the name "StoneMakers Academy" (or "the school") no later than February 2010, with David Montoya as the school's primary instructor. The school was ultimately approved to offer a hardscape construction training that consisted of 64 hours of training over eight days. The course included lectures, written and video instruction, on-site training, and supplies.

### C. The Operation of StoneMakers Academy

Throughout the relevant time period, Simpson served as StoneMakers Academy's SCO. She submitted separate VA Form 22-1999 to the VA to certify each veteran's enrollment in a course and ensure StoneMakers' compliance with the VA rules and regulations, including the same tuition rule and the 85/15 rule.

StoneMakers Academy enrolled hundreds of veterans over the years that followed, with tuition paid for by the VA to the tune of $18,500 per veteran, per course. The government acknowledges that <u>every veteran for whom the VA paid tuition at StoneMakers received the benefits of the course</u>. The problem for StoneMakers Academy is that they did not have sufficient non-veteran interest in their courses to keep pace with veteran enrollments, and therefore could not maintain compliance the 85/15 Rule. In order to induce non-veterans to enroll, StoneMakers often offered discounts in tuition, charging civilian students $13,900 rather than the $18,500 charged veterans.

### D. The Charged Conduct

Ultimately, the charge of conviction focuses on the defendants' obstruction of the VA Office of Inspector General's ("VA-OIG's") investigation into potential violations of the tuition and enrollment rules that were in place. These efforts took place throughout 2018, when the defendant, working with others at StoneMakers Corporation, took steps to conceal StoneMakers Academy's past violations of the 85/15 Rule and same tuition rule from the VA-OIG. For example, on or about July 13, 2018, the defendant sent an email to VA-OIG personnel that did not accurately answer a question whether StoneMakers had violated the 85/15 Rule over several courses between January 2015 and 2018.

The efforts and obstruction intensified as the VA-OIG continued to ask questions and request documents. On or about January 2019 through April 2019, in multiple responses to a subpoena from the VA-OIG, the defendant provided a roster which included civilians who she falsely claimed attended StoneMakers courses in the calendar years 2016 and 2017, thereby concealing the fact that those programs were out of compliance with the 85/15 Rule, and ineligible for participation in the VA educational benefit program. In addition, the defendant and

others provided forged enrollment and tuition contracts for civilians, falsely evidencing their purported attendance at StoneMakers courses in the calendar years 2016 and 2017, thereby concealing the fact that those programs were out of compliance with the 85/15 Rule and/or the same tuition rule, and ineligible for participation in the VA educational benefit program.

StoneMakers Academy's compliance, or lack thereof, with the 85/15 Rule, was material to the VA-OIG's investigation into the appropriate disposition of VA educational benefits.

### III.    THE APPLICABLE GUIDELINES

Under United States v. Booker, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory.  Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'"  United States v. Millan-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 49 (2007)).  "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion."  Millan-Isaac, 749 F.3d at 66 (quoting Freeman v. United States, 564 U.S. 522, 529 (2011)).

"Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion."  Freeman v. United States, 564 U.S. 522, 529 (2011).  The commentary to Guidelines section 6B1.2 further advises that the Court may accept an 11(c)(1)(C) agreement "only if [it] is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence is outside the applicable guideline range for justifiable reasons and those reasons are set forth with specificity."  U.S.S.G. § 6B1.2 at cmt.

Here, the parties jointly objected to the PSR's application of the Fraud guidelines contained in § 2B1.1 because the count of conviction, and the gravamen of defendant's misconduct sounds more in obstruction than in fraud. In this way, the Guidelines are higher than what might otherwise apply to obstructive conduct. The parties are not pressing those objections at sentencing, instead focusing on the factors contained in § 3553(a). The government therefore respectfully requests the Court adopt the Guidelines analysis contained in the Final PSR.

## IV. THE NEGOTIATED SENTENCE IS CONSISTENT WITH THE 3553(a) FACTORS

The government additionally believes the parties' negotiated sentence of 3 years probation is supported by the factors contained in 18 U.S.C. § 3553(a). That statute provides that the Court, in determining the particular sentence to be imposed, "shall consider":

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

**1. Seriousness of the Offense.**

The defendant's conduct here is serious. She deliberately and intentionally sought to obstruct a the VA-OIG's investigation into StoneMakers Academy's lucrative education program. She knew full well that it was important to conceal the fact that past educational programs offered by StoneMakers Academy had been in violation of the 85/15 and same tuition rules. Particularly due to her role as SCO at StoneMakers, the defendant knew that discovery of past compliance failures through the VA's investigation would put StoneMakers Academy's eligibility for future VA educational programs at grave risk and endanger an important source of revenue for StoneMakers.

And yet, through the proposed resolution, the government acknowledges that StoneMakers provided to veterans the course programs for which the VA paid and that the courses were of some actual material benefit to the veterans. In this way, the government analogizes the conduct to the type of obstructive conduct that would have carried a lower Guidelines range as covered in the parties' letters affixed to the PSR. The negotiated restitution—which is not specifically tied to any veteran enrollments or payments— further reflects this reality as the parties acknowledge precisely calculating the specific harm to the VA under these circumstances is extremely challenging.

**2. History and Characteristics of Defendant.**

Defendant is a 55-year-old U.S. citizen. She is a college and law school graduate who was a member of the New Hampshire Bar Association prior to being suspended as a result of her guilty plea in this case. She reports a career of consistent employment, no substance abuse

history and a supporting family.  She has no prior criminal history, and her involvement in the instant offense appears to be aberrant behavior given her prior law-abiding life.  While, of course, those same characteristics can often be said of many white-collar defendants, the government acknowledges that there appears to be no rehabilitative, educational or public safety benefit from incarcerating this defendant.

    **3. Specific and General Deterrence and Promoting Respect for the Law.**

The Government addresses the separately articulated § 3553(a) factors of deterrence, promoting respect for the law, and providing a just punishment in concert.  Here, the government believes the sentence of probation, coupled with the hefty restitution order, would "afford adequate deterrence to criminal conduct" both generally and specifically and promote respect for the law.  18 U.S.C. § 3553(a)(2)(B).  Obstructing a government investigation is serious conduct.  While a first-time offender, the defendant is now a convicted felon and will have to navigate the next three years of her life on federal probation.  She is subject to a substantial restitution order.  Such a resolution will serve not only to deter Ms. Simpson from future misconduct, and also will allow the VA to publicize the real and serious consequences that occur when Post 911/GI Bill education program enrollees obstruct government investigations.  In this way, the resolution promotes respect for the law and the recognition that it is a crime to obstruct an investigation and provide federal investigators false and misleading documents.

## V. CONCLUSION

For the reasons stated above, the Government respectfully requests the Court adopt the parties 11(c)(1)(C) plea, impose a sentence of 3 years probation and $200,000 in restitution. Such a sentence is reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: December 6, 2024

By: /s/ Charles L. Rombeau
Charles L. Rombeau
NY Bar No. 4326500
Assistant United States Attorney
53 Pleasant Street, 4th Floor
Concord, NH 03301
(603) 225-1552